IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| SHELBY BOGERS, | ) | |
| | ) | |
| Plaintiff, | ) | No. 2:10-cv-02523-REJ |
| | ) | |
| v. | ) | OPINION AND ORDER |
| | ) | |
| ROSSMAR AND GRAHAM COMMUNITY | ) | |
| ASSOCIATION MANAGEMENT, INC., named | ) | |
| as: Rossmar and Graham Community Association | ) | |
| Management, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

Francis G. Fanning
FRANCIS G. FANNING ATTORNEY AT LAW
500 E. Southern Avenue, Suite B
Tempe, AZ  85282

  Attorney for Plaintiff

Mark Ogden
Peter C. Prynkiewicz
LITTLER MENDELSON PC - Phoenix, AZ
2425 E. Camelback Road, Suite 900
Phoenix, AZ  85016-2907

  Attorneys for Defendant

JONES, Judge:

Plaintiff Shelly Bogers brings this action against her former employer, Rossmar and Graham Community Association Management, Inc., alleging claims of employment discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*, and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*.

The case is now before the court on defendant's motion (# 24) for summary judgment. For the reasons stated, defendant's motion is denied.

## STANDARD

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. United Steelworkers of America v. Phelps Dodge, 865 F.2d 1539, 1542 (9th Cir. 1989).

The substantive law governing a claim determines whether a fact is material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also T.W. Elec. Service v. Pacific Elec. Contractors, 809 F.2d 626, 630 (9th Cir. 1987). Reasonable doubts as to the existence of a material factual issue are resolved against the moving party. T.W. Elec. Service, 809 F.2d at 631. Inferences drawn from facts are viewed in the light most favorable to the non-moving party. Id. at 630-31.

FACTUAL BACKGROUND

The parties agree on most of the following facts. Plaintiff began working for defendant as a community association manager ("CAM") in May 2005. At the time of her interview, Doug Austin told plaintiff that defendant was growing and expanding and had limited office space. The parties agree that when she began working for defendant, Austin told her she could do some work from home, on a temporary basis, until defendant had additional office space.

Plaintiff has a medical condition known as "intussusceptions," in which, without warning, a portion of the bowel collapses in or telescopes inward. The symptoms of intussusceptions include cramping, sweating, dizziness, diarrhea and general weakness, which can last for a few hours to a full day. According to plaintiff, because of the unpredictable nature of her condition and the debilitating effect of an episode, "it substantially impairs [her] from working in jobs that require regular office attendance." Plaintiff's Response to Defendant's Motion for Summary Judgment, p. 2. Plaintiff admits that she did not make her condition known to defendant when she was hired and did not reveal it until October 2007. Id. at pp. 3, 9.

Defendant's clients are Home Owner Association board members who hire defendant to handle their affairs, including, among other things, hiring employees, monthly board meetings, property inspections, vendor relations, obtaining bids from vendors for property repairs and updates, accounting, receiving monthly/quarterly/annual homeowner assessments, and working with board members and homeowners. After completing her training period, plaintiff was responsible for 14 communities.

From May 2005 through October 2007, plaintiff primarily worked from home, but went to the office daily and met with clients in the field as needed. Plaintiff's Response, p. 3. In

3 - OPINION AND ORDER

December 2005, defendant opened another office, which opened more work space at the corporate office. Nevertheless, defendant continued to allow plaintiff to work from home until September 2007.

According to plaintiff, she suffered periodic unpredictable episodes of intussusceptions several times a month. However, "[s]he was able to continue working from home while recovering from an episode or when the episode was not totally debilitating. . . . [Plaintiff] put in evening and weekend hours to maintain her responsibilities to her clients and Defendant [and] was able to perform the essential functions of her job despite disruptions caused by her condition." Plaintiff's Response, p. 3 (citations omitted).

Austin, who was plaintiff's direct supervisor, states in his declaration that in 2006 and 2007, "I received multiple complaints from board members and homeowners from Plaintiff's associations that Plaintiff was not in the office whenever they would come by with questions or to meet with her. I also received complaints from other employees who worked with Plaintiff regarding the lack of time that she spent in the office." Defendant's Statement of Facts, Exhibit B (Doug Austin's Declaration) ("Austin Decl."), ¶ 9. According to Austin, he spoke with plaintiff several times in 2006 and 2007 to "let her know that I had received complaints about her unavailability and that she needed to spend more time in the office." Id., ¶ 10. Plaintiff denies that statement, asserting instead that "[t]here is no record of any complaints about Plaintiff's office availability, and Austin did not raise the issue with Plaintiff until late 2007. Plaintiff had direct and frequent contact with her clients, and they did not voice complaints to her about her being unavailable." Plaintiff's Statement of Facts, ¶ 20.

4 - OPINION AND ORDER

Austin states that in the second half of 2007, he also received complaints that other CAMs "were not sufficiently available in the office to meet with clients, answer questions, and interact with staff." Austin Decl., ¶ 11. Austin further states that as a result of the complaints, in September 2007, defendant announced to all CAMs that

> they were required to spend a minimum of four hours in the office on Monday through Thursday and that they had to be in the office all day on Friday. We established explicit minimum hours in the office in response to the complaints about the unavailability of Plaintiff and a few other CAMs.

Austin Decl., ¶ 12.

Plaintiff admits that after the announcement, she still was not spending the required time in the office. Austin met with her on September 21, 2007, and gave her a verbal warning concerning this. Defendant's Statement of Facts, ¶ 26; Plaintiff's Statement of Facts, ¶ 26.

Defendant states, and plaintiff admits, the following:

1. On October 1, 2007, plaintiff met with Austin and David Rottner, defendant's CFO, and received a written disciplinary notice for her continued failure to meet the company's minimum hours requirements.

2. Plaintiff responded that she could not agree to work the required amount of time in the office.

3. Austin explained that defendant would have to terminate her employment if she could not meet the required standards. Plaintiff reiterated that she could not, so Austin terminated her and told her that he would get her an exit plan by October 5, 2007. Plaintiff then asked to be terminated immediately. Rottner stepped out to get the president, Jim Hanley, to let him know what was happening.

5 - OPINION AND ORDER

4.  The above all happened before plaintiff told defendant that she had an unspecified medical condition that prevented her from spending the required time in the office.  She did not discuss the specifics of her condition in the meeting with Hanley, although she claims that Austin generally was aware she had a medical condition that caused problems and a need for medical care at times, something Austin denies.

5.  Based on the information plaintiff revealed, Hanley rescinded her termination and asked for a note from her doctor so defendant could assess her situation and determine whether she could perform as a CAM.  Plaintiff saw her doctor that day and submitted a letter from him.  The letter states:

> [Plaintiff] has been a patient of my internal medicine practice since August 2001.  She was diagnosed with Celiac Sprue that was found in association with anemia . . . in February 2000.  She currently has severe bouts of intussusception.  Her pain is exacerbated with sitting, walking, bending and any activities. . . .  These most frequent episodes have been lasting longer and becoming more intense.  Working from her home environment for several years has allowed her to be independent and productive, but also has allowed her the right to privacy in regards to her embarrassing medical symptoms that could and would occur without notice.

Defendant's Statement of Facts, Exhibit F.

6.  After submitting the doctor's letter, plaintiff continued to work as she had in the past.  On October 8, 2007, plaintiff submitted a written request for reasonable accommodation to Austin, in which, among other things, she apologized for keeping her medical condition secret.  See generally Defendant's Statement of Facts, Exhibit G.

7.  In a meeting with several of defendant's representatives, including the Human Resources Director, plaintiff was told that her old position was not available anymore and that she needed to be in the office four hours a day and Friday.  Following the meeting, plaintiff

received a letter confirming the office time requirements and informing her of her potential eligibility for a leave under the Family Medical Leave Act ("FMLA"). The letter included a medical certification form for her doctor to complete.

8. On October 17, 2007, plaintiff experienced an episode at work, which Hanley witnessed and considered serious enough to call 911. After plaintiff spoke with the 911 operator, the operator dispatched an ambulance. That was plaintiff's last day of work for defendant.

9. Plaintiff submitted three medical certifications, all of which, the parties agree, were prepared by her then attorney and presented to Dr. Settles for approval and signature. The first certification stated that plaintiff "must work from home as much as possible at least 30 [hours] out of the 40 [hour] work schedule," to last "[i]ndefinite[,] at least one year." Defendant's Statement of Facts, Exhibit I. In response, defendant's counsel sent plaintiff a letter informing her that her restriction to 10 hours of office work per week was "inconsistent with the essential function of her management position," and that defendant had designated her absence from work as FMLA leave. The letter also informed her that she had until February 11, 2008, to provide a fitness for duty certification. Defendant's Statement of Facts, Exhibit J.

10. Plaintiff submitted a second medical certification in November 2007, in which Dr. Settles certified that she "may need to work at home on an intermittent basis as she has for several years in the past." Defendant's Statement of Facts, Exhibit K (dated November 12, 2007). In response, defendant's counsel wrote another letter to plaintiff, explaining that her position required her to work 75 percent of the time in the office, in board meetings, and in the field. The letter informed plaintiff that if she was able to meet that requirement, she could send in a fitness for duty certification. See Defendant's Statement of Facts, Exhibit L.

7 - OPINION AND ORDER

11.     Plaintiff's then attorney prepared a third certification for Dr. Settles to sign. Instead of signing it, on November 28, 2007, Dr. Settles wrote a letter, Exhibit M to defendant's Statement of Facts, in which he stated, among other things, that:

> [P]laintiff is an excellent employee with an existing medical condition that only prevents her from committing to precise daily business or working hours, but this existing medical condition does not prevent or restrain her from successfully performing and accomplishing the essential functions of the existing job responsibilities as she has in the past several years; which includes attendance to board meetings or office meetings and daily or weekly field inspections.  Again, [plaintiff] has an existing medical condition that requires a reasonable accommodation for her health; the availability to telecommute from home with a customized schedule as practiced for the past several years.

12.     On March 10, 2008, defendant's counsel wrote to plaintiff, informing her that because she failed to submit a fitness for duty medical certification on or before February 11, 2008, defendant had terminated her employment as of that date.  See Defendant's Statement of Facts, Exhibit O.

In addition to the above chronology, defendant states, and plaintiff agrees, to the following concerning her work habits during the time she was permitted to work part-time from home:

1.      Plaintiff never took a full day off work or missed a meeting, and worked 40-60 hours per week.

2.      Plaintiff was sick a few times, but never took a full day off work.

3.      Plaintiff never missed a single board meeting for all of the properties she managed because of an episode.

4.      Plaintiff worked overtime every week to keep up with managing 10 properties since January 2007.

8 - OPINION AND ORDER

     5.     Plaintiff worked between one and four hours in the office every day, and sometimes worked in the office all day.

     6.     Plaintiff worked in the office all day three or four times a month.  On those days, she did not have an episode.

## DISCUSSION

Plaintiff alleges three claims in her complaint:  (1) Failure to accommodate in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*; (2) violation of the FMLA, 29 U.S.C. § 2601 *et seq*; and (3) retaliation in violation of the ADA, 42 U.S.C. § 12203. Defendant moves for summary judgment on all three claims.

With respect to plaintiff's ADA claims, defendant contends that this court should find, as a matter of law, that plaintiff's medical condition does not qualify as a "disability" as defined before the ADA Amendments Act went into effect in 2009.  Alternatively, defendant contends that plaintiff cannot, because of her medical condition, perform an essential function of the job of a CAM; specifically, the office hours requirement imposed in September 2007.  Additionally, with respect to plaintiff's ADA retaliation claim, defendant asserts that there is no evidence that it took any adverse action against plaintiff once she requested accommodation.  Finally, with respect to plaintiff's FMLA claim, defendant asserts that it complied with the FMLA, terminating plaintiff only because she could not provide a fitness for duty certification that she could perform the alleged essential job function of meeting the minimum office hour requirements.

On the record before me, substantial factual disputes preclude entry of judgment as a matter of law on any of plaintiff's claims.  I note that a key underlying assumption of defendant's arguments is that the minimum office hour requirements were "an essential function" of the job

9 - OPINION AND ORDER

of CAM, an argument undercut by the undisputed facts that plaintiff succeeded in her position of CAM working partially from home, and received numerous glowing letters of support from clients before and after her termination.  See Plaintiff's Statement of Facts, Exhibit 4.  I also note that in response to her charge of disability discrimination filed with the Equal Employment Opportunity Commission ("EEOC"), the EEOC issued a determination finding "reasonable cause to believe that there is a violation of the ADA in that the [defendant] denied [plaintiff] needed reasonable accommodation and instead plac[ed] her on involuntary medical leave and terminat[ed] her employment . . . ."  Plaintiff's Statement of Facts, Exhibit 5.[1]

In summary, fact questions preclude summary judgment in this employment discrimination claim.  Consequently, defendant's motion is denied.

## CONCLUSION

Defendant's motion (# 24) is denied.

DATED this 11th day of May, 2012.

    /s/ Robert E. Jones
ROBERT E. JONES
U.S. District Judge

---

[1] The EEOC determination is admissible evidence of discrimination.  See, e.g., Chandler v. Roudebush, 425 U.S. 840, 863 n.39 (1976) ("Prior administrative findings made with respect to an employment discrimination claim may, of course, be admitted as evidence at a federal sector trial de novo.").